**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GINA G., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY,[1] Commissioner of Social Security, <br><br> Defendant. | Civil Action No. 23-21007 (GC) <br><br> **OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Gina G.'s[2] appeal from the final decision of the Commissioner of the Social Security Administration issued under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Martin J. O'Malley, in his official capacity, is substituted in for Kilolo Kijakazi. Fed. R. Civ. P. 25(d). This action "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security." 42 U.S.C. § 405(g).

[2] Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

I.      **BACKGROUND**

      A.      **Procedural History**

This social security appeal centers on Plaintiff Gina G.'s challenge to the Commissioner of Social Security's determination that Plaintiff does not qualify for disability insurance benefits.

Plaintiff has a college education. (AR 71.[3]) She previously worked in multi-level marketing selling makeup. (*Id. at* 86-91, 207, 303.) Plaintiff has also worked as a substitute teacher, fund administrator, receptionist, and patient advocate. (*Id.* at 91-99, 275, 287, 303.)

On January 8, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (*Id.* at 65.) She alleged an onset disability date of October 1, 2018, due to breast cancer with residual left upper extremity restrictions, as well as anxiety, depression, attention-deficit hyperactive disorder (ADHD), lymphedema, and memory loss. (*Id.* at 65, 68, 286.) The application was denied on July 28, 2021, and upon reconsideration on October 8, 2021. (*Id.* at 65, 153, 158.) Plaintiff requested a hearing that was held telephonically before an administrative law judge (ALJ) on April 26, 2022. (*Id.* at 65, 82-120.)

On July 28, 2022, the ALJ issued a decision that was unfavorable to Plaintiff. (*Id.* at 62-81.) The ALJ found that Plaintiff was able to perform light work with additional limitations and was therefore not disabled for purposes of disability insurance benefits. (*Id.*) When the Appeals Council denied Plaintiff's request for review on August 17, 2023, the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1-7, 65.)

On October 10, 2023, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g).

---

[3]     "AR" refers to the Administrative Record. (*See* ECF No. 3.) This Opinion cites the Record's internal page numbers when referring to the Administrative Record. Page numbers for all other cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

2

(ECF No. 1.) Plaintiff argues that she is disabled and asks this Court to find that she is entitled to social security disability insurance benefits. (*Id.* at 1-2.)

Plaintiff filed her opening brief on February 20, 2024. (ECF No. 6.) The Commissioner opposed on March 11, 2024. (ECF No. 8.) Plaintiff replied on March 25, 2024. (ECF No. 9.)

B. **The ALJ's Decision**

On July 28, 2022, the ALJ found that Plaintiff was able to perform light work with additional physical and mental limitations and was therefore not disabled for purposes of disability insurance benefits. (AR 62-81.) The ALJ set forth the five-step process for determining whether an individual is disabled and entitled to said benefits and then examined the evidence at each step. (*Id.* at 66-67 (citing 20 C.F.R. § 404.1520(a)).)

First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2024, and "has not engaged in substantial gainful activity[4] since October 1, 2018, the alleged onset date." (*Id.* at 67 (citing 20 C.F.R. § 404.1571 *et seq.*).)

Second, the ALJ determined that Plaintiff suffers from "the following severe impairments: breast cancer with residual left upper extremity restrictions; an anxiety disorder; a depressive disorder; and [ADHD]." (*Id.* at 68 (citing 20 C.F.R. § 404.1520(c)).) The ALJ also found that Plaintiff suffers from the following non-severe impairments: "hypertension, a neurocognitive disorder, lower extremity cellulitis, and a somatic symptom disorder." (*Id.*) The ALJ determined that "the record shows these conditions were managed medically," and that these conditions "have

---

[4]   "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity "involves doing significant physical or mental activities. [A claimant's] work may be substantial even if it is done on a part-time basis or if [he or she] do[es] less, get[s] paid less, or ha[s] less responsibility than when [he or she] worked before." *Id.* § (a). "Gainful work activity is work activity that [a claimant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id.* § (b).

3

been amendable to proper control by adherence to recommended medical management and medication compliance such that there has been no 12[-]month period during which she has reported symptoms that would have more than minimal impact on her ability to perform work activities." (*Id.*)

Third, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 68-71 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

Fourth, the ALJ outlined Plaintiff's residual functional capacity (RFC).[5] (*Id.* at 71-75.) The ALJ considered "the entire record" and Plaintiff's medical history and notes, including those of Dr. Denis Fitzgerald (Plaintiff's treating oncologist); Drs. Ibrahim Housri and Nawal Abdelmessieh (physicians employed by the State Disability Determination Service to review Plaintiff's medical records and offer an opinion on residual functioning); Dr. Jack Baharlias (an impartial medical consult who examined Plaintiff in connection to her application for benefits); Drs. Sreeja Kadakkal and Turnhan Floyd (physicians employed by the State Disability Determination Service to review Plaintiff's medical records and offer an opinion on residual mental functioning); and Drs. Stephen Theccanat and Nicole Hraniotis (Plaintiff's physicians that provided mental health treatment). (*Id.*) During the hearing, the ALJ also heard from both Plaintiff and a Vocational Expert. (*Id.* at 65, 71-72, 75-76, 82-120.)

The ALJ found that Plaintiff could "perform light work as defined in 20 [C.F.R. §]

---

[5]    "Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his [or her] impairments." *Naviglia v. Colvin*, Civ. No. 15-660, 2016 WL 4733174, at *4 n.3 (W.D. Pa. Sept. 9, 2016).

404.1567(b)" with exceptions.[6] (*Id.* at 71.) The ALJ found that Plaintiff could frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance, stoop, or kneel; frequently crouch or crawl; occasionally reach in all directions with the left upper extremity; occasionally handle, finger, and feel with bilateral upper extremities; was able to understand, remember, and carry out simple instructions; could perform work that does not require specific production rates such as assembly line work or hourly quotas; could adapt to routine changes in the workplace that are occasional; and would be off task 5% of the day due to lapses in concentration, focus, or memory and/or the need for unscheduled breaks. (*Id.*) The ALJ also found that Plaintiff was "unable to perform any past relevant work" as a manager, sales representative, and sales aid. (*Id.* at 75-76 (citing 20 C.F.R. § 404.1565).)

At the fifth and final step, the ALJ concluded that given Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 76 (citing 20 C.F.R. §§ 404.1569, 404.1569a).) Because additional limitations impeded Plaintiff's ability to perform all or substantially all of the requirements of the range of light work, the ALJ "asked the vocational expert whether jobs exist in the national economy for an individual" with Plaintiff's characteristics. (*Id.* at 76-77.) The expert testified at the hearing that the individual would be able to perform the requirements of jobs such as: a children's attendant, "of which there are 5,000 such positions in the national economy";

---

[6]   The Social Security Administration "determine[s] the physical exertion requirements of work in the national economy" by "classify[ing] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. "Light work" is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." *Id.* § (b).

5

investigative dealer, "of which there are 9,920 such positions in the national economy"; and furniture rental consultant, "of which there are 28,000 such positions in the national economy." (*Id.* at 77.)

## II. LEGAL STANDARD

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). In conducting this review, the Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 775-76 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Evidence is not substantial "if it is overwhelmed by other evidence — particularly certain types of evidence (*e.g.*, that offered by treating physicians) — or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

"Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Legal issues, in

contrast, are subject to a plenary review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . ." (quoting *Chandler*, 667 F.3d at 359)).

    **B.**    **Determining Disability**

To be eligible for disability insurance benefits under the Social Security Act, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," i.e., work that exists in significant numbers either in the region where such individual lives or in several regions of the country. 42 U.S.C. § 423(d)(2)(A); *Plummer*, 186 F.3d at 427-28. A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

    **C.**    **Sequential Evaluation**

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims. The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

> [*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)).]

"The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the ultimate burden at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.").

## III.   DISCUSSION

On review of the ALJ's decision (*see* AR 62-81) and the Administrative Record (*see generally* AR), the Court finds good cause to affirm the Commissioner's decision. In reaching a decision, an ALJ must evaluate the evidence and explain the reasons for accepting or rejecting evidence. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). Here, the ALJ provided sufficient reasoning for the Court to determine that the ALJ's findings are supported by substantial evidence.

In support of her appeal, Plaintiff advances one principal argument: "[t]he ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of Dr. Theccanat." (ECF No. 6 at 5, 18; ECF No. 9 at 1.)

Plaintiff's argument focuses on the ALJ's mental RFC determination. (ECF No. 6 at 19.) Plaintiff asserts that the "mental RFC determination is not supported by substantial evidence where the ALJ's evaluation of Dr. Theccanat's opinion did not comply with 20 C.F.R. § 404.1520c." (*Id.*) Under 20 C.F.R. § 404.1520c(a), an ALJ is required to consider medical opinions and determine persuasiveness of the opinions by considering specific factors listed in the regulations. (*See* AR 71.) These factors include: (1) supportability; (2) consistency; (3) relationship of the

8

medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c). Supportability[7] and consistency[8] are the most important factors. 20 C.F.R. § 404.1520c(b)(2). Accordingly, an ALJ must explain in its decision how those factors were considered in the context of "a medical source's medical opinions or prior administrative medical findings." *Id.* Here, Plaintiff asserts that the ALJ failed to assess the supportability factor because "the ALJ completely ignored Dr. Theccanat's own treatment notes." (ECF No. 6 at 20-24.) Plaintiff argues that the ALJ failed to provide a "reasonable explanation as to why Dr. Theccanat's significant findings do not support his opinion," and why Dr. Theccanat's opinion was not persuasive. (ECF No. 9 at 1-2, 4.) As to the consistency factor, Plaintiff asserts that the ALJ never compared Dr. Theccanat's opinions to those of Drs. Baharlias and Hraniotis. (ECF No. 6 at 24-27.) Plaintiff argues that Drs. Theccanat's and Hraniotis' opinions were consistent and that the ALJ failed to acknowledge this point. (ECF No. 9 at 4-5.)

In response, the Commissioner argues that the ALJ recognized Dr. Theccanat as "a treating source" for Plaintiff. (ECF No. 8 at 22). In summarizing Dr. Theccanat's opinion, the ALJ determined that the opinion was "not persuasive" and that the ALJ discussed the factors of supportability and consistency. (*Id.* at 22-24.) Further, the Commissioner argues that Plaintiff is

---

[7]  "Supportability" means that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[8]  "Consistency" means that the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

essentially asking this Court to reweigh the evidence in her favor contrary to the deferential standard of review.  (*Id.* at 19-23.)

After careful consideration of the ALJ's decision, the Court agrees with the Commissioner that the ALJ's evaluation of Dr. Theccanat's opinion is supported by substantial evidence and the ALJ properly addressed the supportability and consistency factors.  *See Jaclyn G. v. Comm'r of Soc. Sec.*, Civ. No. 21-11101, 2022 WL 2116866, at * 6 (D.N.J. June 13, 2022) ("[T]he ALJ's decision must be 'read as a whole' to determine whether [s]he considered the appropriate factors in reaching [her] conclusion" (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004))); *see also Zaborowski v. Comm'r of Soc. Sec.*, Civ. No. 23-2637, 2024 WL 4220691, at *2 (3d Cir. Sep. 18, 2024) (noting that to satisfy the requirements for the supportability and consistency factors, "a judge need not reiterate the magic words 'support' and 'consistent' for each doctor[,]" as long as the judge "weave[s] supportability and consistency throughout her analysis of which doctors were persuasive.").

The Court first examines the ALJ's mental RFC determination, where the ALJ outlined the following with respect to Dr. Theccanat:

> [T]he [Plaintiff] has a reported history of anxiety and depressive symptomology (Exhibit 1F/12F).  However, she first sought treatment during the period at issue in January 2020 primarily for symptoms of anxiety and distractibility (Exhibit 1F/37).  While her initial status exams document mood disturbance with mildly impaired recent memory, and inattentiveness (Exhibit 1F/14, 18, 23, 31, 40), her subsequent mental status exams report benign findings after introduction of medication for ADHD (Exhibit 12F/10, 14, 18). This longitudinal record indicates that the [Plaintiff] is limited to unskilled work activities in a stable work environment that would not [require] specific production rates.
>
> . . . .
>
> [I] have also considered the opinion of treating source Stephen Theccanat, MD, PAPA, who opined in a letter dated June 11, 2021

>   that "due to her psychiatric problems that are aggravated by her multiple medical problems, the [Plaintiff] is unable to do any kind of work-related physical or mental activities as her symptoms severely affect her ability to concentrate or remember thing[s,]" [and] the [Plaintiff] "has severe inability to respond appropriately to supervision and to coworkers as well as routine work pressures" (Exhibit 1F/1).  However, this conclusory statement is unsupported by any supportive rational or reference to diagnostic findings and is inconsistent with the longitudinal treatment record that documents improved mental status exams [when] the [Plaintiff's] ADHD symptoms were treated with medication.  Accordingly, this opinion is not persuasive.
>
>   [(AR 73-74 (citing AR 347-393, 599-618).)]

The Court finds that the ALJ supported this finding with a thorough discussion of the Administrative Record and cited the record throughout her RFC determination.

First, the ALJ acknowledged that Plaintiff reported a history of anxiety and depressive symptoms and cited specifically to Dr. Theccanat's "office treatment records" as support.[9] (*Id.* at 73, 80, 347-393.)  The ALJ also cited to Dr. Hraniotis's "office treatment records."[10] (*Id.* at 73, 81, 599-618).  In referencing portions of the treatment records from both doctors, the ALJ determined that Plaintiff's initial symptoms of anxiety, distractibility, inattentiveness, and memory

---

[9] A review of Dr. Theccanat's records, which begin in January 2020, indicate that Plaintiff has a generalized anxiety disorder, panic disorder, and ADHD. (AR 387.)  Because of these diagnoses, Dr. Theccanat prescribed Plaintiff medication. (*Id.* at 388.)  The records further reveal that Plaintiff reported periods of anxiety, impaired recall, and impaired attention. (*Id.* at 376-79, 368-71; 363-66; 359-62; 357.)  In January 2021, Plaintiff informed Dr. Theccanat that she had some improvement in her ability to focus while on medication but still experiences periods of anxiety. (*Id.* at 355.)  In her final session with Dr. Theccanat, Plaintiff indicated that she struggles with restlessness and still has difficulty focusing, and experiences anxiety because of medical problems. (*Id.* at 348.)

[10] A review of Dr. Hraniotis' records indicate that she treated Plaintiff after Dr. Theccanat retired. (AR at 605.)  Those records show that Plaintiff showed minimal distractibility; had fair concentration or attention; had a mood that was "good overall" or "okay;" displayed logical, goal-directed thought processes; reported no delusions or hallucinations; and had fair insight and judgment. (*Id.* at 608, 612, 616.)  Further, Plaintiff reported that she was managing overall, and that her anxiety, depression, and ADHD are "well managed" on medication. (*Id.* at 611, 613.)

11

impairment became "benign" after the introduction of medication for ADHD. (*Id.* at 73, 360, 364, 369, 377, 383, 386, 608, 612, 616.). The Court finds that the ALJ sufficiently indicated that her review of the record revealed an improvement in Plaintiff's mental health concerns over time, which supports the ALJ's finding that Plaintiff could perform unskilled work activities. (*Id.* at 73-74.) In other words, the ALJ found that Dr. Theccanat's records did not reflect Plaintiff's current mental state as documented by Dr. Hraniotis's more recent records. (*Id.*) (determining that the more recent mental health records of Dr. Hraniotis reveal benign findings as opposed to earlier treatment records by Dr. Theccanat); *see also Joseph P. v. Comm'r of Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945, at *5 (D.N.J. Feb. 10, 2023) (finding that the regulations "reflect a 'reasonable articulation standard' that 'does not require written analysis about how [the ALJ] considered each piece of evidence[;]' rather, the decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.'" (quoting 82 Fed. Reg. 5844-01, at 5858)).

Second, the ALJ supported her determination with Dr. Baharlias's exam report, which was based on an examination of Plaintiff after Plaintiff stopped receiving medical treatment from Dr. Theccanat. (AR 73, 500-503.) The ALJ recognized Dr. Baharlias's findings that while Plaintiff "may have some negative effects of the chemotherapy, which are affecting her concentration and cognitive issues," Plaintiff was "pleasant and cooperative" and showed no "significant social limitations." (*Id.* at 74.)

Third, the ALJ further supported her determination by "essentially adopt[ing]" the findings of Drs. Kadakkal and Floyd, "physicians employed by the State Disability Determination Services (DDS) to review [Plaintiff's] medical record and offer an[] opinion regarding residual mental functioning." (*Id.*) Dr. Kadakkal determined that Plaintiff has mild limitations understanding, remembering, or applying information and interacting with others, while also having moderate

12

limitations concentrating, persisting, maintaining pace, and adapting or managing oneself. (*Id.* at 74, 136-37.) Dr. Kadakkal also determined that Plaintiff has moderate limitations in her ability to adjust to major changes in the work environment and has limitations in "doing complex and detailed tasks secondary to anxiety and ADHD." (*Id.* at 139-40.) Following Dr. Kadakkal's review, Dr. Floyd also evaluated Plaintiff's medical records. Dr. Floyd agreed with Dr. Kadakkal and determined that Plaintiff could perform unskilled jobs. (*Id.* at 144-48.) Regarding these doctors, the ALJ opined that "[a]lthough the medical consultants did not have the opportunity to examine or treat the [Plaintiff], their reports reflect a thorough review of the available records and are supported with sufficient explanation." (*Id.* at 74.) Thus, the ALJ found that "nothing has been admitted into the record to indicate . . . the [Plaintiff's] condition has worsened since these physicians conducted their review to indicate that the [Plaintiff] had additional limitations during the period at issue." (*Id.*) Therefore, the ALJ found these opinions "persuasive regarding the [Plaintiff's RFC]." (*Id.*)

Finally, the ALJ opined that the above-referenced medical evidence in the record, combined with Plaintiff's testimony at the hearing[11] and Plaintiff's function report,[12] supported her decision denying benefits. (*Id.* at 75.) The Court finds that the ALJ sufficiently supported her findings by "weav[ing] supportability and consistency throughout her analysis." *Zaborowski*, 2024 WL 4220691, at *2; *see also Ilana W. v. O'Malley*, Civ. No. 23-02053, 2024 WL 1928533,

---

[11] Plaintiff testified about her depression, anxiety, and issues concentrating and focusing. (AR 72, 75, 109-113.) She also testified that she is able to manage her daily activities but needs to set reminders on her phone. (*Id.* at 72, 75, 110.) Plaintiff takes medication for these issues. (*Id.* at 72, 75, 111.)

[12] In the function report, Plaintiff alleges she struggles concentrating, gets distracted easily, and is forgetful. (AR 75, 300.) Nevertheless, Plaintiff stated that she is able to manage and handle daily activities. (*Id.* at 75, 292-302.)

at *6-7 (D.N.J. Apr. 30, 2024) (finding that the "ALJ did not fail to consider [one of the physician's] professional opinions, but 'reasonably determined they were not persuasive' after appropriately weighing the 'supportability and consistency' of" the physician's opinions).

Plaintiff advances additional arguments in support of her claim that the ALJ failed to properly evaluate the opinion of Dr. Theccanat. (ECF No. 6 at 5, 18; ECF No. 9 at 1.) The Court finds these arguments unpersuasive.

First, Plaintiff argues that "the ALJ completely ignored Dr. Theccanat's own treatment notes," (ECF No. 6 at 20-21), and relies on *Tamya S. on behalf of L.S. v. Kijakazi*, Civ. No. 20-10035, 2021 WL 5757400 (D.N.J. Dec. 3, 2021), in support. Plaintiff's argument is belied by the Administrative Record, as the ALJ explained that Dr Theccanat's opinion was "unsupported by any rational or reference to diagnostic findings and is inconsistent with the longitudinal treatment record that documents improved mental status exams [when] the [Plaintiff's] ADHD symptoms were treated with medication. Accordingly, this opinion is not persuasive." (AR 73-74 (citing Drs. Theccanat's and Hraniotis's "office treatment records").) Thus, the Court is satisfied that the ALJ adequately considered Dr. Theccanat's records in determining that Plaintiff's mental health concerns improved over time.

The Court also finds the case of *Tamya S.* inapposite as that matter involved an ALJ's failure to recognize the diagnoses of mental conditions in a treating physician's report. 2021 WL 5757400, at *7. Here, the ALJ clearly considered Dr. Theccanat's medical findings but did not find such findings persuasive in light of other medical evidence in the record. (AR 73-74); *Zaborowski*, 2024 WL 42206091, at *2 (finding that the ALJ did not "need to say more" about the plaintiff's treating psychiatrist other than the opinion was "not consistent with the record that show[ed] that the claimant ha[d] social avoidance issues, but he [was] able to cope within his

14

limits"); *see also Phillips v. Barnhart*, 91 F. App'x. 775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.").

In sum, the ALJ's finding that Dr. Theccanat's opinion was unpersuasive was a "rational" conclusion "supported by substantial evidence." *See Gober*, 574 F.2d at 775-76. The ALJ's determination was made after appropriately weighing the supportability and consistency of Dr. Theccanat's opinions. (AR 73-74); *see also* 20 C.F.R. §§ 404.1520c(a), (b)(2) (stating that the agency will not give "controlling weight . . . to any medical opinion(s) or prior administrative medical finding(s)," but will evaluate those opinions under "the factors listed in paragraphs (c)(1) through (c)(5) of this section," the most important being "supportability" and "consistency"). While Plaintiff may disagree with the ALJ's conclusions, where "evidence in the record is susceptible to more than one rational interpretation," this Court "must accept the Commissioner's conclusion." *Izzo*, 186 F. App'x at 284.

## IV. CONCLUSION

For the reasons set forth above, and other good cause shown, the Commissioner's final decision is **AFFIRMED**. An appropriate Order follows.

Dated: September 25, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE